Hammond v. Goodale.

# Harry A. Hammond
## v.
# G. L. Goodale.

*Negotiable Instruments—Drafts—Fraud in Securing Acceptances—Negligence of Acceptor—Questions for Jury—Innocent Purchaser—Evidence—Variance.*

1. In an action brought on certain drafts against the acceptor thereof, where the defense was that the acceptance was procured by fraud and circumvention, the acceptor having signed under the belief that he was signing a contract of an entirely different nature, it is *held:* That evidence as to what was said and done immediately prior to the signing of the drafts was admissible, although it did not relate exclusively to the drafts in question.

2. The question whether the drafts were filled out before they were signed by defendant, or if not, whether defendant was guilty of negligence in signing them in blank, was for the jury.

3. The question whether or not plaintiff was an innocent purchaser was, under the circumstances, a question for the jury.

4. The question of variance between the evidence and the pleadings can not be raised in the Appellate Court for the first time.

[Opinion filed December 8, 1890.]

Appeal from the Circuit Court of Stark County; the Hon. T. M. Shaw, Judge, presiding.

Messrs. Hopkins & Hammond, for appellant.

The rule is doubtless well settled that the facts relied upon to show fraud and circumvention in procuring negotiable instruments must be distinctly detailed and set out in a special plea. Goodrich v. Reynolds, Wilder & Co., 31 Ill. 490; Anderson v. Jacobson, 66 Ill. 522; Cole v. Joliet Opera House Co., 79 Ill. 96.

The rule which requires the facts constituting fraud and circumvention to be specially set out in the pleading, of course requires the proof to be limited to such evidence as tends to establish those facts, and not to prove other and different facts which are not pleaded.

We believe it is a well known doctrine in this State, that

the defense of fraud and circumvention against a note or draft in the hands of an innocent purchaser for value is a statutory defense, and that the statute has received a settled construction, to the effect that the fraud and circumvention must relate to the procuring of the act of execution of such drafts or notes, and not to the adequacy or inadequacy of the consideration, nor to the fairness or unfairness of the transaction in which the paper originated, nor to the good faith or bad faith which characterized the trade between the parties, out of which the paper grew. Adams v. Wooldridge, 3 Scam. 255; Easter v. Minard, 26 Ill. 494; Shipley v. Carroll, 45 Ill. 285; Murray v. Beckwith, 48 Ill. 391; Taylor v. Thompson, 3 Ill. App. 109; Hayden v. Olinger, 5 Ill. App. 632; Hendrix v. The People, 9 Ill. App. 42.

One can not set up, as a defense against his note or acceptance in the hands of an innocent purchaser for value before maturity, that he was overreached, cheated, deceived or defrauded in order to get his consent to give his note or acceptance, provided at the time he knew what instrument he was signing and intended to sign it.

Messrs. CHARLES K. LADD and B. F. THOMPSON, for appellee.

The case of Taylor v. Atchinson, 54 Ill. 196, is almost identical with the case at bar.

In that case the court say: " It is urged that, as appellee could read, it was his duty to have availed himself of all the sources of information at his command, precisely as should the purchaser of personal property, as to its quality, and having failed to do so, he is estopped from interposing this defense. This is not, we think, the true construction of this section of the statute (Sec. 10, Chap. 98, entitled ' Negotiable instruments'). * * * It was intended that the defense should be extended even to persons who could read, where they have observed reasonable prudence and precaution. * * * While this may not be the precaution which would have been observed by an unusually cautious man, still, we think he acted as the great mass of men not in or educated to business, act in such cases. See, also, Sims et al. v. Bice, 67 Ill. 88.

In the case at bar the appellee did have his suspicions aroused, and made inquiry, but not of the proper party.

He should have exercised extraordinary precaution from the fact that this paper, against a man represented to be and who was, in fact, "good," was offered to him by a suspicious character for fifty per cent of its value.

"The fact that such a dealer presented the notes of a farmer residing in the vicinity for sale at an unusually large discount for good paper was itself a suspicious circumstance, and was enough to awaken inquiry in the mind of any reasonably cautious person as to the consideration, before buying. Such inquiry could readily have been made, as the maker resided in the vicinity of the village, and the truth ascertained." Peter Auten et al. v. Gruner, 90 Ill. 300.

And if the execution of a promissory note is obtained through the usual device of these men, who go about the country as dealers in patent rights or new inventions, with papers so prepared as to obtain the signature of their victims thereto, when the latter have no intention or expectation of executing a promissory note, it will be void for the fraud and circumvention, even though the signer is unable to explain just how the trick was played on him.

"Our reports abound in such cases, and they show that swindling has been reduced to a fine art, because in the numerous cases that have been brought to this court, we know of none in which the victim was able to explain just how the trick was played upon him." Champion v. Ulmer, 70 Ill. 322.

Appellant's counsel ring the changes on the rights of innocent purchasers of commercial paper. An early case of "innocence" similar to hers appears in an old law book. Jacob's wife had stolen her father's jewels, and when overtaken by a search warrant "innocently" sat upon the property, and asked to be excused from rising because of her delicate condition.

An entirely different rule applies where a man signs an instrument in blank, or signs his name to a paper authorizing it to be filled with an order for goods, but instead a promissory note is written above his name, as in the cases cited by counsel.

It is immaterial whether appellant purchased these accept-

ances with or without notice of the fraud and circumvention, it is a good defense. Hewitt v. Jones, 72 Ill. 218.

"And the statute does not require fraud and circumvention . to be used, * * * but where fraud or circumvention is practiced in obtaining the execution of the instrument, in either event the defense can be made availing." Hewitt v. Johnson, 72 Ill. 513.

The facts in this case are similar to the facts in the case at bar.

The victim signed some papers, but did not knowingly sign a note. The papers that he did sign were carefully examined before they were executed, and it could not be determined from the evidence how his signature to the note was obtained. When the papers were ready for his signature, the dealer in patent rights and promissory notes "shuffled them around," and by some device substituted the note. See, also, Hubbard v. Rankin, Sr., 71 Ill. 129.

The objection that there is a variance between the third plea and the proofs can not be entertained. Had the objection been urged below, the court would have allowed an amendment of the plea to correspond with the proofs. Driver et al. v. Ford et al., 90 Ill. 595.

The rule in respect to a variance between the allegations in a pleading and the proof, is substantially the same both at law and in equity. Meers v. Stevens, 106 Ill. 549.

If there is a variance between the plea and the proofs, objections should have been made on the trial, so that it might have been obviated by an amendment. City of Elgin v. Kimball, 90 Ill. 356; I. & St. L. Ry. Co. v. Estes, 96 Ill. 473; City of Bloomington v. Tebballs, 17 Ill. App. 455.

We think the evidence substantially supports our pleas.

LACEY, J. This suit was brought by appellant against the appellee in assumpsit to recover on two drafts drawn by Hall & Co. payable to Thomas E. Hall and directed to appellee, for $500 each, dated July 3, 1889, one payable October 1st, after date, and the other February 1st, after date, purporting to be accepted by appellee in writing over the face thereof. There was a plea of *non est factum* sworn to by appellee as well as

the 3d plea, which was a plea of fraud and circumvention on the part of Hall in obtaining appellee's signature to the acceptances to the drafts, in that Hall, in pretending to get appellee's signature to a pretended contract for the sale of Hall & Co.'s hydro-carbon burner attachment, water heaters and steam cookers, as the agent of Hall & Co. in Westerfield township in Henry county and in Stark county, Illinois, fraudulently substituted a paper other than the contract, to wit, the drafts and acceptances sued on, without the knowledge, consent, neglect or intention of appellee. The case went to trial before a jury on the issue and resulted in a verdict in favor of appellee, upon which verdict judgment was rendered against appellant for costs.

There is no question but that the appellee's name was procured by Thomas E. Hall to the acceptance by the basest deception and fraud, and that the contract which appellee supposed he was executing, was used as a mere blind to mislead and deceive him, the procuring the signatures to the acceptances being the object in view. The appellant became the purchaser of the drafts on the day of their date for $500. He was the cashier of the bank at Wyoming, and upon their being presented to him by Hall and offered for sale, and after making some inquiries about the genuineness of appellee's signature, purchased them.

The appellant complains, as his counsel say, "chiefly" that the "court" allowed the case to go to trial before a jury, "upon such a footing as to try the question whether or not the appellee had been cheated by Thomas E. Hall in the agency transaction out of which the said agency originated, rather than the question whether they were procured by the fraud and circumvention set up in the plea." We do not think the point is well taken. In the first place the testimony of appellee is, in which he is not contradicted by any one, that he did not knowingly sign any drafts or other obligation to pay money, and no such thing as that was even suggested. The court allowed appellee to state the conversation between himself and Hall in regard to the agency, the agreement, and the conversation and circumstances leading to it, and refused

to confine the witness alone to what was said and done relating to the signing the papers in suit. We do not think the court erred in this. The jury had a right to have what was said and done just immediately prior to the signing of the papers for the purpose of throwing light on what was the real intention and agreement of the parties. It was important to know what was agreed on and intended, so that the jury might see whether appellee was simply overreached in the contract and signed the acceptances knowingly, or whether his signature was procured by fraud and circumvention. Besides it was all one transaction and a part of the *res gestae.* We see no error in the ruling of the court in this particular.

There is no complaint by the appellant as to the instructions, but it is admitted that they are correct. But it is urged that the evidence shows that appellee signed the papers in blank which he supposed to be intended to be filled up with an agreement concerning his commissions, and if that be the case, he was negligent to such a degree that he would be bound by whatever acceptances Hall might write if they came into the hands of the appellant an innocent purchaser. But the question of negligence in this State is one for the jury, and it is not a question of law, and besides we are unable to determine from the evidence whether appellee meant to say that Hall was intended to be allowed to carry away the blanks or not, if there were any blanks, which is very doubtful. It rather appears from the fact that Hall pretended to read the supposed agreement for the commissions to appellee after he signed the supposed blanks, that he had already filled them up, or appellee so understood it. But from the way they were covered up by Hall when appellee signed them, and from the fact that if the acceptances were first signed by the appellee, it would be difficult to write the draft over the signature without its showing, the jury were justified in finding, and no doubt found, that the drafts were drawn before appellee's name was written across the face of them. However these facts may be, they were all questions for the jury, involving no questions of law.

It is insisted by counsel for appellee, that appellant can not

be regarded as an innocent purchaser, for the reason that the notes were discounted fifty cents on the dollar, and from the fact that he could easily have found appellee and inquired of him about the notes and failed to do so; and other alleged suspicious circumstances which were sufficient to show bad faith on his part. As to this point there is no question of law involved, and it was a question for the jury, the same as the other questions in the case, and we need not comment on it, as both points were covered by the verdict. Suffice it to say on the whole case we think the jury were justified in finding as they did, and that the evidence sustains the verdict. The appellant is not allowed to raise the question of variance between the evidence and plea in this court for the first time. City of Elgin v. Kimball, 90 Ill. 356; I. & S. L. Ry. Co. v. Estes, 96 Ill. 473.

The judgment is therefore affirmed.

*Judgment affirmed.*