**John G. Hutton, Appellee, v. The Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.**

Heard in this court at the May term, 1930. Opinion filed September 22, 1930.

P. J. KOLB and W. W. WHEATLEY, for appellant; H. N. QUIGLEY and S. W. BAXTER, of counsel.

K. C. RONALDS, for appellee.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellant's railroad through the City of Eldorado runs east and west and crosses 4th and 5th Streets. When it was constructed in 1872 it was built on a four-foot embankment. The streets were not paved until 1913, and prior to that time the surface water was carried in open ditches along 4th and 5th Streets, the natural flow of the water being to the south and southwest. In June, 1927, appellee owned two lots fronting on 4th Street, upon which there was a hotel building. This building was about 100 feet north of the railroad right of way and appellee's lots extended east about half the distance between 4th and 5th Streets.

Appellee sued to recover damages to his real estate alleged to have been caused by appellant's failure to maintain openings through its embankment on 5th Street sufficient to carry off the surface waters coming from the north. In his declaration he averred that he was the owner and in possession of the real estate upon which he conducted a hotel; that his real estate was 100 feet north of appellant's right of way, and that before appellant constructed its embankment and railroad the water falling on the lands north of his real estate naturally drained to the south and the flow thereof was unobstructed; that after appellant constructed its railroad it failed to make and maintain sufficient culverts and openings through its said embankment on 5th Street and that on, to wit: June 1, 1927, a large amount of rain fell upon the land north of appellant's real estate and by reason of the insufficient openings through appellant's embankment the natural flow of the water was diverted and cast upon appellee's property which was thereby depreciated in value to the amount of $3,000. Appellant filed the general issue and several special pleas, and the trial resulted in a verdict and judgment for $1,000.

The evidence shows that the city paved 5th Street in 1913 and placed a sewer in the west side of the street and filled up the open ditches. That sewer begins about 112 feet north of the north line of appellant's right of way and is 24 inches in diameter. It extends to the north line of appellant's right of way and is connected with a sewer of the same size which extends through appellant's right of way and embankment on 5th Street, and on the south side of the right of way it connects with the city's 15-inch sewer which extends in a southeasterly direction for some distance and empties into an open ditch. The city raised the grade of 5th Street north of the right of way from the point where the sewer begins to the railroad right of way. Railroad Street extends east and west along the north line of the railroad right of way and lies between the said right of way and appellee's property. There is a 12-inch sewer which starts at the manhole on 5th Street at the north line of appellant's right of way and extends in a southwesterly direction and passes through a culvert, or opening, in the embankment at 4th Street.

Appellee testified that there was a very heavy rain in the early morning of June 20, 1927, and that his property was flooded, and the building damaged. He says that the water which caused the damage came across the vacant lots east of his property from 5th Street; that the water going down 5th Street would go into the sewer if it was open, but when the sewer got filled up it would come over the lots east of his property. He says that on the morning the rain occurred, the water was running in the direction of the sewer, but the sewer was choked up at the end and was not carrying its full capacity. The end of the sewer referred to is the point where the city sewer begins and is about 112 feet north of appellant's right of way. He also testified that if the railroad embankment had not been there and the rise had been there on 5th Street as it is, the water

would have stayed there and passed over his premises just as it did.

The undisputed evidence is that the city had provided but a 15-inch sewer to receive and carry the water from the 24-inch sewers on 5th Street. It is quite apparent that appellee's property was flooded because the city sewer was choked at the entrance thereto and because the city had provided an outlet through a 15-inch sewer which was wholly insufficient to promptly carry away the contents of the 24-inch sewer whenever that sewer was full. The only evidence produced by appellee on the question as to whether the sewer through appellant's embankment was sufficient to carry the water was the testimony of a civil engineer called by appellee, and he was not asked anything about that in his direct examination. He simply testified that the city and appellant had 24-inch sewers, that the city had a 12-inch sewer from the manhole along Railroad Street and a 15-inch sewer south of appellant's right of way. He said that the sewers were insufficient to carry the water, but did not undertake to explain the matter, and admitted that he had not examined the sewers with that point in view. It may be that he meant that the city had not provided sewers large enough to carry the water from the 24-inch sewer. He was not present at the time of the flood and knew nothing about it. Appellee was there and saw the situation, and he said that the city sewer was choked at the entrance thereto.

If the city was negligent in permitting the sewer inlet in the street to become obstructed so that the surface water could not be carried off in the sewer, it would be liable for damages occasioned thereby. *Bouillon v. City of Greenville,* 233 Ill. App. 500. The undisputed evidence is that the carrying capacity of a sewer pipe 24 inches in diameter is considered by civil engineers as 17 6/10 cubic feet per second; and that of a 15-inch pipe as 6 3/10 cubic feet per second.

If appellant had built a 10-foot sewer through its right of way and embankment, and the city had only provided a 15-inch sewer as an outlet therefor, it is quite evident that the carrying capacity beyond the line of appellant's sewer would only be that of a 15-inch sewer. Where a railroad company was sued for diverting the flow of surface water from its natural channel the court said: "We are aware of no rule of law under which it can be held that the appellant is responsible for damages which did not result from its own act or omission, but arose from the act of another." *Chicago & Alton R. Co. v. Glenney,* 118 Ill. 487.

Appellee failed to prove that appellant was guilty of the negligence charged in the declaration and for that reason the judgment is reversed.

*Reversed with finding of fact.*

The clerk will insert in the judgment the following: "The court finds that appellee failed to prove the negligence charged in his declaration."