218     APPELLATE COURTS OF ILLINOIS.

The Rienzi Co. v. Com'rs of Lincoln Park et al., 198 Ill. App. 218.

## The Rienzi Company v. Commissioners of Lincoln Park and Charles E. Affeld, on appeal of The Rienzi Company.

### Gen. No. 20,574.

1. CONTRACTS, § 139*—*when agreement between park commissioners and abutting property owners for maintenance and repair of street invalid as against public policy.* An agreement between a board of park commissioners in the City of Chicago and owners of property abutting on a street in such city, providing for the payment of a yearly amount per front foot by such owners to the commissioners, *held* contrary to public policy, where such commissioners had previously accepted an ordinance making it their duty to maintain and repair such street, on the grounds that park commissioners have no authority to compel abutting owners to pay for the *maintenance or repair* of a street after the making of the *initial improvement* as such expenses are to be met by general taxation.

2. MUNICIPAL CORPORATIONS, § 159*—*what does not constitute a contract for improvement of streets for which municipality may accept aid from individuals.* A contract for payment of a certain annual sum by abutting owners to park commissioners for the maintenance of a boulevard does not come within the doctrine that a municipality may accept aid from individuals in making an improvement to a street, so as to constitute such contract valid and enforceable.

3. CONTRACTS, § 85*—*when contract between park commissioners and abutting property owners for maintenance of street without consideration.* An agreement between the Board of Park Commissioners of the City of Chicago and the property owners abutting on a street, for the payment of a yearly amount per front foot by such owners for maintenance purposes, is invalid as being without consideration.

Appeal from the Superior Court of Cook county; the Hon. JOHN M. O'CONNOR, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded with directions. Opinion filed March 9, 1916. Rehearing denied March 21, 1916.

**Statement by the Court.** On January 14, 1913, The Rienzi Company, an Illinois corporation, filed its

*See **Illinois Notes Digest**, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

bill of complaint in the Superior Court of Cook county against the Commissioners of Lincoln Park and Charles E. Affeld, defendants. In the bill as amended it is alleged in substance, that complainant is the owner and in possession of Lots 10, 11, 12 and 13, in Block 3 in Le Moyne's Subdivision, etc., in Cook county; that it acquired title thereto by warranty deed dated July 1, 1912, from James Coupland and wife, who acquired their title by warranty deed, dated June 28, 1912, from the defendant Charles E. Affeld; that on July 19, 1888, there was filed for record in the office of the recorder of deeds of Cook county a certain "pretended agree-ment" as follows:

"AGREEMENT OF PROPERTY OWNERS FOR MAINTENANCE AND REPAIR OF DIVERSEY AVENUE BOULEVARD.

"Whereas, the Board of Trustees of the Town of Lake View, in the County of Cook and State of Illinois, did by an ordinance approved Dec. 20, 1886, and by an amendatory ordinance approved May 2, 1887, grant permission to the Commissioners of Lincoln Park to accept and improve that portion of Diversey street in the said Town of Lake View lying East of Clark street.

"And Whereas, the Board of Commissioners of Lincoln Park hesitate to accept said street because of the expense of maintaining said drive after the same shall be improved by a special assessment.

"Now, Therefore, for the purpose of inducing the Commissioners of Lincoln Park to accept said street and for the purpose of providing a fund for the future maintenance of the portion of said Diversey street above mentioned, the undersigned owners of the property abutting thereon noted opposite our respective signatures hereto attached, hereby agree to pay, on or before the first day of May in each year, on request of the Commissioners of Lincoln Park, a sum not exceeding twenty-five (25) cents for each front foot of the property described opposite our respective names for the maintenance of said portion of Diversey street,

and for the purpose of securing the payment of said sums respectively each of us, for himself and not for the others, hereby agrees that this covenant shall be made a charge or lien upon said property, to be enforced in any manner now or hereafter provided by law, and to this stipulation and covenant we severally bind our heirs, executors and assigns.

"In Witness Whereof, we have hereunto set our hands and seals, and described the lots owned by us respectively, this —— day of November, A. D. 1887."

That said document was signed by divers property owners owning property abutting on Diversey street, and among them the said defendant, Charles E. Affeld, who was then the owner of the property above described, his signature thereto being as follows: "C. E. Affeld, 186 feet, being for Lots 10, 11, 12 & 13 in Block 3, Le Moyne's Subdiv."; that said document was not signed by the Commissioners of Lincoln Park; that said property abuts on what is now known as Diversey boulevard, and that at the time of the execution and the recording of said document, and in December, 1886, said street was known as that portion of Diversey street, lying east of Clark street, and was located within the Town of Lake View in said Cook county, and was under the jurisdiction of the board of trustees of said town; that said board of trustees, by ordinance approved December 20, 1886, and by an amendatory ordinance approved May 2, 1887, granted permission to said Commissioners of Lincoln Park to accept and improve said portion of Diversey street; that on June 7, 1887, said commissioners accepted said ordinances and accepted and assumed control and jurisdiction of said portion of Diversey street as a boulevard; that by said amendatory ordinance approved May 2, 1887, it was provided that said permission granted to said commissioners to take, control and improve said portion of Diversey street was granted upon the condition that "the cost of all improvement and re-

pairs and maintenance'' of said boulevard ''shall be paid by the owners of property abutting thereon, to be assessed and collected on said abutting property *in the manner provided by law;''* that the only method then provided by law therefor was by general taxation or special assessment, and that said pretended agreement with said commissioners was in violation of the terms of the aforesaid ordinance; that the defendant Charles E. Affeld, for five years subsequent to the execution of said document, paid to said commissioners the amounts provided for therein and then discontinued such payments; that for more than fifteen years last past neither said Affeld, nor any other property owner signing said document and owning property abutting on said boulevard, have recognized the validity of the same, or paid any sums of money thereunder or for the purpose of improving or maintaining said boulevard, except as such payments were made by way of general taxes or special assessments levied by the proper corporate authorities upon and collected from the respective premises owned by the signers of said document; that said Commissioners now claim and pretend that there is due from said Affeld for unpaid instalments under said pretended agreement a large sum of money, and claim and pretend that by virtue thereof said commissioners have a lien upon said premises of complainant for said amount; that said claim is false, and that said claim and said pretended agreement so recorded constitute a cloud upon the title of complainant to said premises, depreciate the value thereof and render the same unsalable; and that said pretended agreement was and is void and of no effect. The bill prayed that said pretended agreement be adjudged a cloud upon the title of complainant and be removed as such, etc.

The defendant, Charles E. Affeld, filed an answer in which he admitted the material allegations of the bill.

222    APPELLATE COURTS OF ILLINOIS.

The Rienzi Co. v. Com'rs of Lincoln Park et al., 198 Ill. App. 218.

The defendant, Commissioners of Lincoln Park, filed an answer admitting that complainant was the owner and in possession of said premises, that the agreement mentioned in the bill was signed by said Affeld and others, and duly delivered to said commissioners, and recorded on July 19, 1888; that the ordinance and amendatory ordinance mentioned in the bill were passed, and that on June 7, 1887, said commissioners accepted said ordinances and assumed control and jurisdiction over said portion of Diversey street as a boulevard. The ordinance of December 20, 1886, is set out in full in the answer. It is recited in said ordinance that a majority of the owners in frontage of the lots abutting on Diversey street, east of Clark street, have presented their consent and petition to said board of trustees for the taking over by said Commissioners of Lincoln Park of said portion of Diversey street, laying east of Clark street, as a boulevard, upon the condition, among others, that *"one-half of the cost of all improvements and repairs and maintenance of said boulevard shall be paid by the owners of property abutting thereon, to be assessed and collected on said abutting property in the manner provided by law."* It is further recited in the ordinance that the General Assembly of the State of Illinois has passed an act amending sections 1 and 2 of an Act entitled: "An Act to enable park commissioners and corporate authorities to take, regulate, control and improve public streets leading to public parks; to pay for the improvement thereof, and in that behalf to make and collect a special assessment or special tax on contiguous property," approved April 9, 1879. It is further recited in the ordinance that the Board of Lincoln Park Commissioners are desirous of taking over said portion of Diversey street, east of Clark street, for the uses and purposes in said act mentioned, and that it is deemed desirable that the prayer of said petition be granted. It is then provided in the ordinance that the consent

be given to said commissioners to take, control and improve said portion of Diversey street in manner and form as provided in said act of the General Assembly, subject to the rights and powers on the part of said Town of Lake View as to the laying of gas and water pipes and the building and repairing of sewers, etc. After the setting out of the ordinance of December 20, 1886, the answer alleges that said commissioners refused to accept said ordinance or to assume control or jurisdiction over said portion of Diversey street *unless* the owners of the property abutting on said proposed boulevard would agree to pay *the cost* of all improvements and repairs and maintenance of the same; that thereupon, and before the passage of said amendatory ordinance of May 2, 1887, the owners of the property abutting on said proposed boulevard "did agree to pay the cost of all improvements and repairs and maintenance" of said portion of Diversey street "if accepted by The Commissioners of Lincoln Park"; and that thereupon the said amendatory ordinance was duly passed. This amendatory ordinance of May 2, 1887, is set out in full in the answer. It is therein provided that the ordinance of December 20, 1886, "is hereby amended so that the consent therein given and granted shall be upon the further condition that *the cost* of all improvements and repairs and maintenance of the boulevard * * * shall be paid by the owners of property abutting thereon, to be assessed and collected on said abutting property *in the manner provided by law."* The answer further alleges, in substance, that said Charles E. Affeld continued to make payments for *maintenance* of said boulevard to said commissioners, under the agreement mentioned in the bill, for a period of twelve years up to April 1, 1899, but that since then he has refused to make payments thereunder; that on August 13, 1912, this defendant, Commissioners of Lincoln Park, commenced a suit in assumpsit against

224    APPELLATE COURTS OF ÎLLINOIS.

The Rienzi Co. v. Com'rs of Lincoln Park et al., 198 Ill. App. 218.

him in the County Court of Cook county for the amount then due and unpaid, about $650, which suit is now pending and undetermined, and that there is now due this defendant from said Affeld the sum of $697.50, and lawful interest thereon.  The answer denies that the claim against said Affeld is false, or that said agreement constitutes a cloud upon the title of complainant for the reasons charged in the bill; and further alleges, in substance, that the defendant is a municipal, or *quasi* municipal, corporation and by law has acquired jurisdiction and control over said portion of Diversey street, and has publicly exercised such control and jurisdiction for more than twenty-five years last past, during all of which time this defendant has improved and maintained said street so that it has caused the property of said Affeld to rise in value, etc.; that by reason of said agreement and the maintenance of said boulevard by this defendant, the said Affeld, and the other property owners on said boulevard, were spared the expense and cost of frequent special assessment proceedings for the improvements of said street, all of which said Affeld has for more than twenty-five years acquiesced in; and that by reason of said acquiescence and acceptance of benefits by him and his assigns complainant is estopped from now attacking the validity of said agreement.

On October 29, 1913, said defendant, Commissioners of Lincoln Park, filed its cross-bill against complainant and said Charles E. Affeld, in which it alleges, in substance, that it is a corporation organized under an act of the General Assembly, approved and in force February 8, 1869, and amendments thereto; that said ordinance of December 20, 1886, and said amendatory ordinance of May 2, 1887, were passed by the Board of Trustees of the Town of Lake View; that the same were accepted by cross-complainant on June 7, 1887, upon the conditions therein stated; that thereupon, in November, 1887, in compliance with the condi-

tions named in said ordinances, the owners of a majority of the frontage on said portion of Diversey street, including said Affeld, executed and delivered the agreement set out in complainant's bill, and the same was recorded on July 19, 1888; that cross-complainant took upon itself the control, management and jurisdiction over said portion of Diversey street as a boulevard, has made all necessary improvements and repairs, and maintained the same as a boulevard up to the present date and ever since the time of the entering into of said agreement; that said Affeld, from May 1, 1888, to about May 1, 1899, continued to pay to cross-complainant each year, on or before May 1, the sum of $47.50, but that since May 1, 1899, he has refused to pay said annual instalment of $47.50, as in equity and good conscience he was bound to do; that on July 1, 1912, The Rienzi Company acquired title to the premises in question, at which time there was due to cross-complainant for the *maintenance* of said boulevard the sum of $617.50, which, by the terms of said agreement of November, 1887, was a charge or lien upon said premises, and was a binding obligation upon said Rienzi Company, but which amount it has refused to pay; and that said agreement is a valid and legal contract and binding both upon said Affeld and The Rienzi Company. The cross-bill prayed that an account be taken and that both said Affeld and The Rienzi Company be decreed to pay cross-complainant whatever sums may be found due to it, and that in default of payment the said premises be sold, etc.

To this cross-bill separate answers were filed by The Rienzi Company and Affeld, in which they denied that anything was due from either of them by virtue of said agreement, and alleged the invalidity of said agreement for reasons substantially as set forth in the original bill of The Rienzi Company. Replications were filed to the answers to the bill and to the cross-bill.

After a hearing in open court before the chancellor, a decree was entered, March 13, 1914, dismissing complainant's bill (as amended) for want of equity, finding the equities with the cross-complainant, Commissioners of Lincoln Park, and adjudging that unless the cross-defendant Charles E. Affeld, or the cross-defendant The Rienzi Company, or one of them, pay or cause to be paid to the cross-complainant, within thirty days, the sum of $418.87, the said premises be sold, etc. From this decree The Rienzi Company and Charles E. Affeld severally prayed appeals to this court, which were allowed and subsequently perfected. This is the appeal of The Rienzi Company.

The decree contained full findings of facts and the further finding that the facts as found were all the material facts proved at the hearing. The decree recites in *haec verba* the original ordinance of December 20, 1886, and the amendatory ordinance of May 2, 1887, the acceptance of said ordinances by the Commissioners of Lincoln Park on June 7, 1887, the property owners' agreement thereafter signed on the———day of November, 1887, and further recites that said agreement was delivered to and accepted by said Commissioners and recorded July 19, 1888, and that about the time of the acceptance thereof the commissioners took control, management and jurisdiction over said portion of Diversey street as a boulevard, and have since managed and maintained the same as a boulevard. The decree further finds, in substance, that on January 15, 1900, the Town of Lake View, at the instance of said commissioners, filed its petition in the Superior Court of Cook county for the confirmation of a special assessment for the "improvement of said Diversey boulevard east of Clark street as a Lincoln Park boulevard"; that said special assessment was duly confirmed on January 10, 1901, as against the property of Charles E. Affeld, as well as against other property; that thereupon in the years 1901 and 1902 said Affeld "paid the

amount of said special assessment levied against the premises in question, being more than the sum of $800," and that said improvement of the street was duly made as provided; that said special assessment proceedings "did not take the place of or abrogate the agreement hereinbefore described—but that said special assessment was for a new improvement of said street"; that after said special assessment proceedings the Commissioners of Lincoln Park continued to control and maintain said portion of Diversey street as a boulevard; that after the confirmation of said special assessment, and since the year 1901, the said Affeld has refused to pay to the commissioners "his proportion of the cost of said *maintenance* as provided in said agreement," although the commissioners have from year to year demanded of him and of various other owners the amounts of 25 cents per front foot as the same accrued; that ever since the execution of said agreement the corporate authorities of the Town of Lake View, at the instance of the commissioners, have from year to year caused to be levied upon all taxable property in said town, as provided by statute, a park tax for the maintenance and government of Lincoln Park and all boulevards and streets under the control of said commissioners; that said taxes have been levied against the premises of complainant and been paid yearly by said Affeld, while he was the owner thereof, as a part of the general taxes, and by complainant since it became the owner thereof, and that said commissioners have received and applied all such park taxes so levied against said premises for the .purpose of *maintaining* said park system, including Diversey boulevard; that beginning with the year 1888 and up to and including the year 1900, said Affeld has paid for the maintenance of said portion of Diversey boulevard the sum of 25 cents per foot of his said premises; that from the year 1903 to and including the year 1912, the annual expense to said commissioners for

228        APPELLATE COURTS OF ILLINOIS.

The Rienzi Co. v. Com'rs of Lincoln Park et al., 198 Ill. App. 218.

the maintenance of said boulevard has ranged from .203 cents per front foot in 1903, to .527 cents in 1912; that there is due said commissioners from May 1, 1903, to May 1, 1913, under the terms of said agreement, the total sum of $418.87 for the maintenance of said boulevard for said premises; that said commissioners are not entitled to recover any amounts under said agreement accruing prior to a period of ten years next preceding the filing of the bill herein, the said amounts being barred by the statute of limitations; that said Charles E. Affeld is legally obligated to pay said amount of $418.87 so found due to said commissioners, as well as any and all future amounts which may accrue to said commissioners, under the terms of said agreement, against said premises, and that said sum of $418.87 constitutes a lien and charge upon said premises, and that the interest of The Rienzi Company in said premises is subject thereto; that there is no evidence that said Affeld signed the petition to the Town of Lake View relative to payment by abutting property owners on Diversey street of the cost of all improvements, repairs and maintenance of said boulevard, as recited in the ordinances of December 20, 1886, and May 2, 1887, but that there is evidence that said Affeld was in favor of said street being turned over at that time to said commissioners by said town for the purpose of said boulevard, and that he made no objections to said commissioners assuming control and jurisdiction thereof.

VINCENT D. WYMAN, CHARLES E. CARPENTER and OTTO W. JURGENS, for The Rienzi Company.

RICHBERG, ICKES & RICHBERG, for Charles E. Affeld.

FRANCIS O'SHAUGHNESSY, for Commissioners of Lincoln Park,

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

It is contended that the court erred in dismissing the bill as amended, and in not dismissing the cross-bill for want of equity.

Section 21 of the act entitled "An Act to fix the boundaries of Lincoln Park in the City of Chicago, and provide for its improvement," approved and in force February 8, 1869, provided, among other things, that the Commissioners of Lincoln Park shall in regard to said park "possess all the power and authority now by law conferred on or possessed by the common council of said city in respect to the public squares and places in said city." Section 17 of said act required the commissioners each year to make an estimate of the amount necessary to be expended for the improvement and repair of said park and drive during the next succeeding year and to certify the same to the county clerk, to be by him extended, as a "Lincoln Park Tax," upon the taxable property in the towns of North Chicago and Lake View; and it is therein further provided that the taxes so collected shall be paid to the commissioners and used by them in improving and keeping in repair the park and drive. By section 2 of the Act of April 19, 1869, said section 17 was repealed, and the commissioners were directed to make an estimate of the amount of money required to pay any debt falling due during the next year and for the improvement, maintenance and government of Lincoln Park during the next succeeding year, which estimate shall be certified to the supervisors of said towns, who shall determine the amount of tax necessary for the purpose and certify the same to the county clerk, who shall extend the same as a "Lincoln Park tax," and the "taxes so levied and collected shall be paid to the Commissioners of Lincoln Park and by them applied to purposes aforesaid." On April 9, 1879, the Legislature passed an act entitled "An Act to enable

Park Commissioners or Corporate authorities to take, regulate, control and improve public streets leading to public parks; to pay for the improvement thereof, and in that behalf to make and collect a special assessment or special tax on contiguous property." (Laws Ill. 1879, p. 216.) Sections 1 and 2 of said act were amended by an act approved June 27, 1885. (Laws Ill. 1885, p. 225.) Section 1 (as amended) provided, in substance, that every board of park commissioners shall have power to connect any public park, boulevard or driveway under its control with any part of any incorporated city, town or village, by selecting and taking any connecting street or streets, or part thereof, leading to such park, *providing* there be first obtained the consent of the corporate authorities having control of such street or streets, and also the written consent of the owners of a majority of the frontage of the lots and lands abutting on such street or streets so far as taken. Section 2 (as amended) conferred power on such board of park commissioners to improve, maintain and repair such street or streets as they might deem best, and such board were authorized from time to time to levy or cause to be levied or collected a special tax or assessment on contiguous property abutting on such street so improved, "for a sum of money not exceeding the estimated cost of such improvement or improvements *and* for the *future maintenance and repair thereof,* as shall be ordered and estimated by such board of park commissioners"; and to that end it was further provided therein that such board should have all the power and authority then or thereafter granted to them relative to the levy, assessment and collection of taxes or assessment for corporate purposes. Said act (as so amended) was in force when the ordinance of December 20, 1886, and the amendatory ordinance of May 2, 1887, were passed by the Board of Trustees of the Town of Lake View. It is quite probable that the provision in the amenda-

The Rienzi Co. v. Com'rs of Lincoln Park et al., 198 Ill. App. 218.

tory ordinance of May 2, 1887, ceding control of said portion of Diversey street to the Lincoln Park Commissioners upon condition that "the cost of all improvement, and repairs and maintenance" of the boulevard should be paid by the owners of property abutting thereon, "to be assessed and collected on said abutting property *in the manner provided by law*," had reference to the provision contained in said section 2 (as amended) relative to "future maintenance and repair." By an act of the Legislature, approved June 16, 1887, said section 2 was again amended, and boards of park commissioners were authorized to cause to be levied and collected a special tax or assessment on contiguous property "for a sum of money not exceeding the estimated cost of such *first* improvement or improvements as shall be ordered and estimated by such board of park commissioners, *but not for any subsequent care, maintenance or repair thereof*." (Laws Ill. 1887, p. 247.) Said section 2 was further amended by an act of the Legislature, approved May 25, 1909 (Laws Ill. 1909, p. 294), but the words last above quoted were unchanged. On June 17, 1893, the Legislature passed an act entitled "An Act to authorize corporate authorities having jurisdiction and control of parks and boulevards to levy a special tax upon contiguous property abutting on boulevards and pleasureways, for the *maintenance and repair thereof*." In the case of *Crane v. West Chicago Park Com'rs*, 153 Ill. 348, our Supreme Court at the October term, 1894, decided that said act was unconstitutional and void. The court, quoting from *Hammett v. Philadelphia*, 65 Pa. St. 155, said (p. 353): "Repairing streets is as much a part of the original duty of the municipality—for general good—as cleaning, watching and lighting. It would lead to monstrous injustice and inequality should such general expenses be provided for by local assessments." During the year following the decision in the *Crane* case,

*supra,* the Legislature, on June 21, 1895, passed an act entitled "An Act to enable Park Commissioners or park authorities to take, regulate, control and improve public streets, and to pay for the improvement thereof." In section 2 of the act it is expressly provided that "no such special tax, or special assessment, shall be levied for the *maintenance and repair* of said improved street, but the same shall be maintained and repaired by said park boards or park authorities as in other cases." (Laws Ill. 1895, p. 291.)

From the above we think it appears that, by the public policy of the State, park commissioners have not had, at least since the adoption of the Constitution of 1870, power or authority to compel abutting property owners by special assessment to pay for the *maintenance or repair* of a boulevard after the making of the initial improvement, but that the expense of such maintenance or repair must be met by general taxation. And we are of the opinion that the agreement of November, 1887, is without consideration and contrary to public policy. The court found in the decree that on June 7, 1887, the Commissioners of Lincoln Park accepted the ordinance of December 20, 1886, as amended by the ordinance of May 2, 1887. This acceptance was prior to the date of the agreement, and by virtue of the acceptance it became the duty of the commissioners, after the making of the initial improvement, to *maintain* and *keep in repair* said portion of Diversey street as a boulevard. (*City of Alton v. Hope,* 68 Ill. 167, 169.) The doing by the commissioners of acts which they were required to do by law is not a consideration for the promise of Affeld and others. (20 Am. & Eng. Encyc. Law, 2nd Ed., 1159; *City of St. Louis v. The Maggie P.,* 25 Fed. Rep. 202; *Randolph County Com'rs v. Jones,* 1 Ill. 103.)

It is contended by counsel for the commissioners that, under the doctrine that a municipality may accept aid from individuals in making an *improvement*

to a street, the contract in question is valid and may be enforced. We do not think that the cases cited in support of the contention are in point. They are cases where the contracts were made with reference to contemplated improvements. The contract in question has reference to the future *maintenance* of the street, not to the *improvement* thereof.

Our conclusion is that the court erred in dismissing the bill of The Rienzi Company for want of equity and in entering the decree on the cross-bill in favor of the Commissioners of Lincoln Park. The decree is reversed and the cause remanded with directions to dismiss the cross-bill for want of equity, and to enter a decree in favor of The Rienzi Company, complainant, in accordance with the prayer of its bill as amended.

*Reversed and remanded with directions.*